COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Humphreys and Senior Judge Overton
Argued at Chesapeake, Virginia


RESIDENTS INVOLVED IN SAVING
 THE ENVIRONMENT, INC., THE CONGREGATION
 OF SECOND MOUNT OLIVE BAPTIST CHURCH,
 D. WINIFRED BELDON AND KENNETH R. BYRD,
 INDIVIDUALLY AND AS TRUSTEES OF SECOND
 MOUNT OLIVE BAPTIST CHURCH, JAMES ROBINSON,
 EDNA ROBINSON, MORVITZ JORDAN,
 DOLLY JORDAN AND BETTY A. DUNGEE
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 3103-99-2           JUDGE NELSON T. OVERTON
                                         JULY 25, 2000
COMMONWEALTH OF VIRGINIA,
 DEPARTMENT OF ENVIRONMENTAL QUALITY, ex rel.
 DEPARTMENT OF WASTE MANAGEMENT, DIRECTOR AND
 EXECUTIVE SECRETARY AND
 BFI WASTE SYSTEMS OF NORTH AMERICA, INC.


            FROM THE CIRCUIT COURT OF KING AND QUEEN COUNTY
                       Thomas B. Hoover, Judge

            Clarence M. Dunnaville, Jr. (Henry L. Marsh,
            III; Frederick H. Marsh; David S. Bailey;
            Hill, Tucker & Marsh, on briefs), for
            appellants.

            John R. Butcher, Senior Assistant Attorney
            General (Mark L. Earley, Attorney General;
            Deborah Love Feild, Assistant Attorney
            General, on brief), for appellee Commonwealth
            of Virginia, Department of Environmental
            Quality, ex rel. Department of Waste
            Management, Director and Executive
            Secretary.

            Timothy G. Hayes (Hunton & Williams, on
            brief), for appellee BFI Waste Systems of
            North America, Inc.

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Residents Involved in Saving the Environment, Inc., et al., ("Residents")[1] appeals a decision of the trial court upholding the issuance of a landfill permit in King and Queen County by the Department of Environmental Quality ("DEQ").  Residents argues the trial court erred in:  (1) finding the Director of DEQ ("the Director") complied with Code § 10.1-1408.1(D) and the mandate of the Supreme Court of Virginia in issuing the permit; (2) dismissing Counts II through VII of the petition for appeal; and (3) granting the motions for summary judgment filed by DEQ and Browning-Ferris Waste Systems of North America, Inc. ("BFI").  DEQ raises the following additional issues: (4) the trial court erred in allowing the amendment to the petition stating claims of the trustees of Second Mount Olive Baptist Church ("the church"); and (5) Residents Corporation and the church lack standing to appeal absent an explicit authorization from the legislature.  Finding no error, we affirm the decision of the trial court.

FACTS

On June 2, 1993, DEQ issued a solid waste facility permit to BFI to construct and operate a landfill in King and Queen County.  Residents appealed the decision to issue the permit to the circuit court.  On May 30, 1995, the circuit court entered an order affirming the decision by DEQ to issue the permit.  Residents

---

[1] Residents Involved in Saving the Environment, Inc. is an organization of persons residing and/or owning property near a landfill site in King and Queen County.

-

appealed the circuit court decision to this Court.  We reversed
the circuit court's decision in Residents Involved in Saving the
Env't, Inc. v. Commonwealth, 22 Va. App. 532, 471 S.E.2d 796
(1996), aff'd in part, vacated in part, remanded in part,
Browning-Ferris Indus. v. Residents Involved in Saving the Env't,
Inc., 254 Va. 278, 492 S.E.2d 431 (1997).  We held that DEQ failed
to make "an explicit determination of 'no substantial present or
potential danger to human health or the environment'" as required
by Code § 10.1-1408.1(D).  Id. at 545, 471 S.E.2d at 803 (citation
omitted).  We remanded the case to the circuit court for remand to
DEQ to make the required statutory determination.

BFI and DEQ appealed our decision to the Supreme Court of
Virginia.  The Supreme Court remanded the case to the circuit
court with instructions to remand the matter to DEQ for the
Director to "consider the existing record and make the required
statutory determination before issuing a new permit in this case."
Browning-Ferris Indus., 254 Va. at 285, 492 S.E.2d at 435.

The circuit court entered an order on December 10, 1997,
remanding the matter to DEQ and ordering the Director to consider
the existing record and to "make an explicit determination"
whether the landfill facility "poses a substantial present, or
potential danger to human health or environment" pursuant to Code
§ 10.1-1408.1(D).  The trial court also ordered that the
determination be made "with a degree of particularity that
demonstrates a substantive consideration of the statutory factors

-

of Code § 10.1-1408.1(D)."  The December 10, 1997 order "suspended and set aside" the decision to issue the solid waste facility permit.

On December 17, 1997 the Director wrote a letter to BFI stating his decision to issue the proposed permit.  The Director determined the proposed permit included conditions necessary to comply with the applicable statutes and regulations.  He further found the proposed permit "poses no substantial present or potential danger to human health or the environment."  The Director stated he considered the following information in making his decision:

> [T]he record already prepared in this matter, including the Virginia Waste Management Act (Code §§ 10.1-1400 et seq.), the Solid Waste Management Regulations (9 VAC 20-80-10, et seq.), the permit application, the permit as proposed, the record of the public hearing held on the Permit on March 24, 1994, comments by the local government, public comment on the proposed permit, and the recommendations and conclusions of [DEQ]'s staff in response to public comment and to data submitted in support of the Permit application.

The Director also incorporated into his finding two documents that he stated "further elaborate on the safeguards that serve to protect human health and the environment from potential threats posed by the improper disposal of waste."  The documents included the requirements imposed by the Solid Waste Management Regulations and "the public comment response document," which contained DEQ's responses to concerns raised during the public comment period.

-

On February 19, 1998, Residents appealed the Director's decision to issue the permit to the City of Richmond Circuit Court. The City of Richmond Circuit Court transferred venue to King and Queen County Circuit Court. DEQ and BFI filed demurrers to the petition. Residents filed numerous motions, including a motion for leave to file an amended petition for appeal, which the trial court granted on May 26, 1999. The trial court also granted the demurrers of BFI and DEQ to Counts II through VII of the amended petition for appeal and dismissed those counts.

On November 9, 1999, the trial court heard arguments on cross-motions for summary judgment concerning the remaining Count I. This count raised the issue of whether the Director failed to comply with the mandates of the Supreme Court and the trial court in issuing the permit on December 17, 1997. The trial court affirmed the Director's decision to issue the permit and dismissed Count I by order entered on December 3, 1999. This appeal followed.

<u>ANALYSIS</u>

I. <u>Code § 10.1-1408.1(D)</u>

Residents argues the Director failed to comply with Code § 10.1-1408.1(D), the decisions of this Court and the Supreme Court, and the mandate of the circuit court when issuing the permit.

-

Former Code § 10.1-1408.1(D) provided in part:

> No permit for a new solid waste management facility shall be issued until the Director has determined, after investigation and evaluation of comments by the local government, that the proposed facility poses no substantial present or potential danger to human health or the environment.[2]

In Browning-Ferris Indus., the Supreme Court held the language of former Code § 10.1-1408.1(D) was "clear and unambiguous, and requires the Director, before issuing a permit for a new solid waste management facility, to make an explicit determination that the proposed facility poses no substantial present or potential danger to human health or the environment." Browning-Ferris Indus., 254 Va. at 284, 492 S.E.2d at 435.

The Court further stated:

> The Director's determination must appear on the face of the agency record. Unlike other statutory provisions such as Code § 10.1-1408.1(E), which requires the Director, among other things, to issue "written findings" after reviewing the environmental compliance record of permittees, Code § 10.1-1408.1(D) does not mandate that the Director's determination be reduced to writing. Thus, it may be preserved as part of the DEQ record in a recorded or written format.
>
> The Director's determination must be made with a degree of particularity that demonstrates a substantive consideration of the statutory factors. A conclusional

---

[2] The legislature substantially changed the language of Code § 10.1-1408.1(D) in 1999, but the changes are not at issue in this case.

> recitation of the statutory language or a
> statement that the Director complied with
> the statute is insufficient to satisfy this
> statutory mandate.  The analysis which the
> Director employs in considering the
> statutory factors is a matter submitted to
> his discretion and expertise under the
> statutory scheme.

Id. at 285, 492 S.E.2d at 435.

Residents contends there is no evidence in the record that the Director ever made an explicit determination or finding that the facility poses no substantial present or potential danger to human health and the environment with a degree of particularity that demonstrates substantial consideration of the statutory factors as mandated by the courts.  Residents further argues that the Director's December 17, 1997 letter contains "a conclusional recitation of the statutory language without a degree of particularity that demonstrates a substantive consideration of the statutory factors . . . ."

However, as stated above, the Director considered a variety of information in forming his decision to issue the permit.  He stated in his December 17, 1997 letter that he considered the record prepared in the matter, the applicable Act and regulations, the permit application, the record of the public hearing, the comments made by local government and the public, and the recommendations of the DEQ staff.  Residents asserts that the record was still in the circuit court when the Director wrote the December 17, 1997 letter.  However, even if we assume

-

that is true, the Director could have reviewed DEQ's copy of the record or could have reviewed the record while it was in the circuit court. The Director attached to his letter several documents from the record clearly indicating he had access to the record in this matter.

Furthermore, the attachments to the letter indicate with particularity the factors reviewed by the Director in making his decision. The attachments include the Solid Waste Management Regulations, which address in detail technical information to be considered for a permit application, such as hydrogeologic reports, maps, local government certification, design and operations plans, distances to surface and groundwater sources, availability of groundwater monitoring, wetlands, and many other considerations.

In addition, another attachment, the DEQ staff response to the public comments received, addressed many environmental issues raised by the public. These included questions raised concerning nearby shallow drinking water wells, groundwater monitoring requirements, the location of the landfill near Dragon Run, the handling of surface water run-off from the site, and the detection of landfill liner leaks.

Although Residents argues that the Director's analysis did not indicate he made the requisite statutory determination with a degree of particularity demonstrating a substantive consideration of the statutory factors, the Supreme Court

-

specifically stated that "[t]he analysis which the Director employs in considering the statutory factors is a matter submitted to his discretion and expertise under the statutory scheme." Id. The Director specifically addressed in his letter and in the attached documents the factors and information he considered in issuing the permit. We find the Director did not abuse his discretion in the analysis he employed in making the determination and that his determination was "made with a degree of particularity that demonstrates a substantive consideration of the statutory factors." Id. Therefore, we affirm the trial court's holding that the Director's determination to issue the permit was supported by the agency file, minutes and record and was made in compliance with former Code § 10.1-1408.1(D).

II. Trial Court's Dismissal Of Counts II through VII

Residents contends the Director's determination failed to consider or address concerns related to the siting of the landfill, wetlands, the presence of archeological and historic sites at the landfill location, possible groundwater contamination, and the presence of potential endangered species on the site.

However, in Residents' first petition for appeal regarding the permit, which was filed in the trial court in 1993, Residents raised these same issues. In its opinion letter dated May 4, 1995, the trial court wrote that Residents raised "various instances of human health and environmental

-

implications surrounding the issuance" of the permit.  "These include:  air, dust, gas, the character of the area where the landfill is located, wildlife, endangered species, surface and groundwater, water supplies, wetlands, noise, roads and road use and historic resources and sites."  The trial court found that nothing in the record showed that any regulations that could address these concerns were not considered in the permitting process.  Residents did not appeal these findings when it appealed the trial court's decision to affirm the issuance of the permit in 1995.

> [T]he established rule of appellate procedure in this Commonwealth [is] that if a matter is appealed and a party fails to preserve a challenge to an alleged error made by the trial court by assignment of error or cross-error, the judgment of the trial court becomes final as to that issue, a doctrine commonly referred to as the "law of the case," and precludes further litigation of that issue if the case is remanded to the trial court for further proceedings by the appellate court.

Commonwealth v. Luzik, 259 Va. 198, 206, 524 S.E.2d 871, 876 (2000).  Indeed, at oral argument on April 14, 1999, the trial court asked Residents' counsel why "these twelve factual issues" were not raised in the first appeal.  In reply, Residents' counsel conceded that "the court had already ruled that there was substantial evidence in the record to support a decision on those issues."  Because these issues were decided by the circuit court in 1995, and Residents chose not to raise the issues in

-

its appeal, the "law of the case" doctrine precludes Residents' attempt to re-litigate these issues at this time.

In Count V, appellant averred that the Director limited his determination under Code § 10.1-1408.1(D) of substantial present or potential danger to human health or the environment to the conditions and requirements of existing solid waste regulations, but he was required to make the determination "irrespective of such limitations."  To the extent this count raised issues regarding Code § 10.1-1408.1(D), those issues are addressed above in Issue I.  To the extent Count V raised issues of whether substantial evidence in the record supported the Director's decision and raised issues of potential groundwater and surface water contamination, the question was conclusively answered by the trial court in 1995.  Accordingly, the trial court did not err in dismissing Counts II through V.

Although Residents states in its second question presented that the trial court also erred in dismissing Counts VI and VII, Residents failed to address the dismissal of those two counts in its brief.  "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration. We will not search the record for errors in order to interpret appellant's contention and correct deficiencies in a brief." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).  Accordingly, we will not address the dismissal of those counts.

-

### III.  Motions for Summary Judgment

Residents argues the trial court erred in granting summary judgment in favor of DEQ and BFI because, prior to issuing the permit, the Director failed to make the "statutorily mandated explicit finding" pursuant to the opinions of this Court and the Supreme Court.  However, for the reasons stated above, the trial court did not err in granting the motions for summary judgment.

### IV.  Amended Petition

DEQ argues the trial court erred in allowing Residents to file an amended petition stating claims of the trustees of the church.  The right to file an amended pleading rests in the sound discretion of the trial court, and shall be liberally granted in furtherance of the ends of justice.  See Rule 1:8; Alphin v. Alphin, 15 Va. App. 395, 400, 424 S.E.2d 572, 575 (1992).  The amended petition lists the same appellants as the original petition with the exception that, in the amended petition, two persons are named both individually and as trustees of the church.  Therefore, the trial court did not abuse its discretion in allowing this amendment.

### V.  Standing

DEQ argues that Residents Corporation and the church lack standing because (1) Code § 10.1-1457 does not explicitly provide for representative standing; (2) neither the church nor Residents Corporation has suffered an "actual or imminent

-

injury"; and (3) because the entities are not "person[s] aggrieved" under Code § 10.1-1457(A).

We find the entities have standing pursuant to <u>Concerned Taxpayers of Brunswick County v. Dep't of Envtl. Quality</u>, 31 Va. App. 788, 525 S.E.2d 628 (2000). The church, a legal entity owning property adjacent to the landfill, alleged that its water well and cemetery would be affected by the landfill operations. Residents' members, many of whom are adjacent landowners, alleged injury to their water supplies and property values as a result of the operation of the landfill. Therefore, both entities are "persons aggrieved" by a final decision of the Director in issuing the permit. <u>See</u> Code § 10.1-1457(A).

The record indicates that members of both the church and Residents, Inc. participated in the public hearings in the matter pursuant to Code § 10.1-1457(B).[3] Furthermore, the

---

[3] Code § 10.1-1457(B) provides:

> Any person who has participated, in person or by the submittal of written comments, in the public comment process related to a final decision of the Board or Director under § 10.1-1408.1 or § 10.1-1426 and who has exhausted all available administrative remedies for review of the Board's or Director's decision, shall be entitled to judicial review thereof in accordance with the Administrative Process Act (§ 9-6.14:1 et seq.) if such person meets the standard for obtaining judicial review of a case or controversy pursuant to Article III of the United States Constitution. A person shall be deemed to meet such standard if (i) such person has suffered an actual or imminent

-

allegations of the entities demonstrated the potential danger to the environment, human health, and economic interests of the parties if the permit is not properly issued.  Therefore, the church and Residents, Inc. are subject to "imminent injury" which is a "concrete and particularized" injury if the permit is improperly issued.  See Concerned Taxpayers, 31 Va. App. at 797, 525 S.E.2d at 632.  Moreover, the imminent injury is fairly traceable to the action of the Director in issuing the permit, and would likely be redressed by a favorable decision of the court in assuring the proper permitting procedures pursuant to Code § 10.1-1408.1(D) are followed.  See Code § 10.1-1457(B). Accordingly, DEQ's standing argument is without merit.

Finally, in the Relief Requested portion of its brief, Residents requests that we hold it has substantially prevailed as a matter of law and within the meaning of Code § 9-6.14:21, and it requests that we instruct the trial court to consider an award of attorney's fees and costs in accordance with Code § 9-6.14:21.

---

injury which is an invasion of a legally
protected interest and which is concrete and
particularized; (ii) such injury is fairly
traceable to the decision of the Board and
not the result of the independent action of
some third party not before the court; and
(iii) such injury will likely be redressed
by a favorable decision by the court.

-

One of the requirements entitling a party to an award of attorney's fees under Code § 9-6.14:21 is if "such person substantially prevails on the merits of the case." Code § 9-6.14:21(A). Clearly, Residents did not substantially prevail on the merits of this case. Therefore, we deny the request that we instruct the trial court to consider attorney's fees.

For the reasons stated above, we affirm the decision of the trial court.

Affirmed.